UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH COX, Jr.,

    Plaintiff,                                         CASE NO. 06-CV-10350-BC

v.                                                              DISTRICT JUDGE DAVID M. LAWSON
                                                             MAGISTRATE JUDGE CHARLES BINDER

CORRECTIONAL MEDICAL SERVICES,
INC., DR. AUDBERTO ANTONINI,
DR. CLARK, DR. DOYLE, DR. KIM,
DR. MESSANY, DR. PANDYA,
DR. STEEL, G. COTTON CORRECTIONAL
FACILITY, MICHIGAN DEPARTMENT
OF CORRECTIONS, DAVID DEGRAAF,
KARMEN BLOUNT, MS. BLACK,
MR. LOCKHART, JEAN MARIE KING,
JAYNA SHARPLEY, P.A. SHERMAN,
PEGGY LEE, SERGEANT HODGKINS,
SERGEANT SAWYER, and JCF HEALTHCARE,

    Defendants.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT**
(Dkts 52, 60)

I.    **RECOMMENDATION**

    For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motions to Dismiss or for Summary Judgment be **GRANTED**, and that the case be **DISMISSED**.

II.    **REPORT**

    A.    **Introduction**

    By order of U.S. District Judge David M. Lawson, this case was referred to the undersigned Magistrate Judge for general case management on February 7, 2006. (Dkt. 4.) Pending are two motions:

    1) Defendants Michigan Department of Corrections ("MDOC"), Karmen Blount ("Blount"), Ms. Black ("Black"), Mr. Lockhart ("Lockhart"), Jayna Sharpley ("Sharpley"), Peggy Lee ("Lee"), Sergeant

Hodgkins ("Hodgkins"), Sergeant Sawyer ("Sawyer"), and Dr. Clark's Motion for Summary Judgment (Dkt. 52); and

2) Defendants Dr. Steel, P.A. Sherman, Correctional Medical Services, Inc. ("CMS"), Dr. Audberto Antonini ("Dr. Antonini"), Dr. Kim, Dr. Messany, and Dr. Pandya's Motion to Dismiss (Dkt. 60.).

Plaintiff filed a response opposing Defendants' motion for summary judgment (Dkt. 59), and a response opposing Defendants' motion to dismiss (Dkt. 63.)  Defendants filed a reply to Plaintiff's response to the motion to dismiss. (Dkt. 64.)

Defendants Dr. Doyle, G. Cotton Correctional Facility, David DeGraaf, and Jean Marie King have not filed any dispositive motion.  David DeGraaf's waiver of service was returned executed on May 15, 2006; his answer was therefore due on July 14, 2006, but none was filed.  (Dkt. 32.)  Attempted service of G. Cotton Correctional Facility has apparently never been made.  The remaining two Defendants' (Doyle and King) waivers of service were returned unexecuted and no subsequent filings were made regarding their status.  (Dkt. 21 (King); 29 (Doyle).)

After review of the pleadings, pursuant to E.D. Mich. LR 7.1(e)(2), I conclude that these motions are ready for Report and Recommendation without oral argument.

    B.    **Background**

Plaintiff is an inmate in the custody of the Michigan Department of Corrections ("MDOC") and is currently housed at the Riverside Correctional Facility ("RCF") in Ionia, Michigan.  The incidents giving rise to Plaintiff's complaint took place while he was incarcerated at that facility as well as the Muskegon Correctional Facility ("MCF"), Jackson Correctional Facility ("JCF"), Charles Egeler Reception and Guidance Center ("R&GC"), and Southern Michigan Correctional Facility ("SMI"), which are all located in Jackson, Michigan, as well as Mound Correctional Facility ("MCF"), which is in Detroit, Michigan.  (Compl., Dkt. 1 at 2, ¶ 6.)

In Plaintiff's *pro se* complaint, filed January 26, 2006, he alleges that upon arrival at the R&GC in Jackson, Michigan, in early March of 2001, he was given an eye examination at the eye clinic in Duane

2

Waters Hospital because Plaintiff is an insulin-dependent diabetic. (Dkt. 1 at 7, ¶ 20.) The examination revealed that Plaintiff "had bleeding blood vessels in the back of both eyes." (*Id.* ¶ 21.) Dr. Dastair, who is not a party to this lawsuit, performed laser surgery on Plaintiff several times that year. (*Id.* ¶ 21-22.) In early June of 2001, while at SMI, Plaintiff complained of "seeing blood spots in his eyes and his vision getting blurry," so he sent kites to Health Care requesting to see Dr. Dastair. (*Id.* ¶ 23.) Plaintiff filed a grievance on June 30, 2001, and was then seen by "another doctor who contacted Dr. Dastair." (*Id.*) Plaintiff eventually saw Dr. Dastair, who referred him to Dr. El-Naggar "because a different type of surgery was now needed." (*Id.* ¶ 24.) Dr. El-Naggar is not a party to this lawsuit.

Plaintiff was then transferred to RCF and was seen by Dr. Margherio, who is also not a party to this lawsuit, who performed "vitrectomy surgery" on Plaintiff's right eye on January 22, 2002, because Plaintiff's "retina had detached." (*Id.* ¶ 26.) On August 19, 2002, "Plaintiff was transferred to JCF, ostensibly for medical reasons" but he alleges "the quality of health care went from bad to worse." (*Id.* ¶ 28.) Plaintiff was "seen several times by the doctors at the DWH Eye Clinic" and although "several of these doctors requested referrals to Dr. El-Naggar," Defendants CMS and MDOC "via their foot dragging, denied these requests" despite the fact that Plaintiff had sent "numerous kites." (*Id.* ¶ 28.) "Plaintiff eventually met with N.P. Russ who set up an appointment with Dr. El-Naggar on March 7, 2003 . . . . [Dr. El-Naggar] stated that Plaintiff was now **legally blind** and that any more surgery to his right [eye] would cause more pain than he could stand." (*Id.* ¶ 29 (emphasis in original).) However, Dr. El-Naggar did perform surgery on Plaintiff's left eye. (*Id.*) Although Dr. El-Naggar wanted to see the Plaintiff three months after the surgery, Plaintiff contends he did not see him until at least thirteen months later. (*Id.*) Plaintiff "also has a cataract which the defendants have refused to treat despite recommendations from surgeons to the contrary." (*Id.* ¶ 31.)

Plaintiff avers that the defendants have failed to "grant the Plaintiff the accommodations afforded by the Americans with Disabilities Act and MDOC policy [and that] [t]hese issues include a failure to provide him with writing or legal assistance in a timely manner as well as failure to provide him with

3

medication intended to mitigate his condition in a timely manner . . . [and that the defendants] have refused to provide health care for the Plaintiff, forcing him to bring this action." (*Id.* ¶ 34-35.)

Specifically, Plaintiff avers that Defendants, while acting under color of state law, deprived Plaintiff of his right to be free from cruel and unusual punishment under the Eight Amendment of the United States Constitution and 42 U.S.C. § 1983. (*Id.* ¶ 59.) Plaintiff requests: 1) an injunction ordering Defendants to not take any retaliation against him and to "secure" "adequate and prompt medical care" for Plaintiff; 2) compensatory damages in the amount of $25,000,000; and 3) punitive damages in the amount of $1,000,000 against each Defendant.

### C.     Motion Standards and Governing Law

#### 1.     *Pro Se* Status

I note at the threshold that Plaintiff brings this action *pro se*. A *pro se* litigant's pleadings are to be construed liberally and judged against a less stringent standard than pleadings drawn by attorneys. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). Nevertheless, "a *pro se* litigant, whether a plaintiff or defendant, is required to follow the law." *Williams v. Sears, Roebuck and Co.*, 143 F. Supp. 2d 941, 947 (W.D. Tenn. 2001). As the U.S. Supreme Court stated in *McNeil v. United States*, 508 U.S. 106, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993), "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *Id*. at 113.

*Pro se* plaintiffs "are not automatically entitled to take every case to trial." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). In addition, it "is not the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court is not to "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citation omitted). "The district court is not required to make [a *pro se* litigant's] argument for him [because] [s]uch a mandate would 'require the courts to explore exhaustively all potential claims of a *pro se* plaintiff . . . [and] would

. . . transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Crawford v. Crestar Foods*, No. 98-3144, 2000 WL 377349 (6th Cir. April 6, 2000) (unpublished) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

**2.    Motion Standards**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal for failure to state a claim upon which relief can be granted. "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). Accordingly, when deciding a dismissal motion, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176 (6th Cir. 1996) (citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993)).

**3.    Eighth Amendment Standards**

The Eighth Amendment to the U.S. Constitution protects convicted inmates from the imposition of "cruel and unusual punishments." U.S. CONST. amend. VIII. In the context of prison medical treatment, the Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), that the deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain in violation of this constitutional clause. The Court explained that, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in

5

violation of the Eighth Amendment." *Id.* at 106. Thus, mere inadequate medical treatment is not sufficient to state a violation of the Eighth Amendment. In *Estelle,* the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. **Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.** In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (emphasis added) (quotations omitted).

Consequently, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are insufficient to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id. See also Jones v. Martin*, 5 Fed. Appx. 434 (6th Cir. 2001) (prisoner who received extensive medical attention for a badly decayed tooth but experienced little pain relief failed to state a constitutional claim).

A violation of the Eighth Amendment can occur if it "is manifested by prison doctors and their response to prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104. The inquiry is two-pronged, consisting of both an objective and a subjective element. *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). The objective inquiry asks whether the deprivation was sufficiently serious. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). The *Caldwell* court found that

the plaintiff-prisoner "did not suffer a serious deprivation because his injuries were not serious enough to require immediate medical attention." *Id.*

A medical need is sufficiently serious if "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2005). However, "[t]his 'obviousness' standard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs 'may also be decided by the *effect* of delay in treatment.'" *Id.* (emphasis in original).

The subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Id.* The plaintiff must show that the defendant's conduct demonstrated a level of deliberateness "'tantamount to an intent to punish.'" *See Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993) (quoting *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988)). In 1994, the Supreme Court further explained this element "by equating it with criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm." *Sanderfer*, 62 F.3d at 154 (citing *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994)). In *Farmer,* the Court specified that for a government official to be deliberately indifferent, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Finally, the government official must have "disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

When a plaintiff claims that delay in medical treatment amounted to a violation of the Eighth Amendment, he must "'place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Napier v. Madison Co., Ky,* 238 F.3d 739, 742 (6th Cir. 2001), quoting *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994). However, "where a plaintiff's claims arise from an injury or illness 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention,' the plaintiff need not present verifying

7

medical evidence to show that, even after the delayed necessary treatment, his medical condition worsened or deteriorated." *Blackmore,* 390 F.3d at 899-900. "Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.* at 900.

    **D.**    **Analysis and Conclusions**

        **1.**    **Defendants MDOC, Black, Lockhart, Lee, Hodgkins, Sawyer, Sharpley, and Blount**

Defendants argue in their dispositive motion that Plaintiff has failed to state a claim under 42 U.S.C. § 1983, based on an alleged Eighth Amendment violation, or the Americans with Disabilities Act ("ADA"), and that the Defendants are entitled to qualified immunity. (Dkt. 52 at 2-5.)

Regarding the Eighth Amendment violation, Plaintiff's own averments do not support a claim that medical care was delayed or denied in such a manner as to amount to deliberate indifference to his medical needs. Despite the fact that Plaintiff filed numerous grievances complaining of delay or complaining that he did not receive the prescription drug of his choice (e.g., Dkt. 1 at B, J, G), Plaintiff has not alleged any detrimental effect amounting to anything more than aggravation on his part.

Plaintiff states that he was given examinations, laser surgery several times in one year, referrals to other doctors such as Dastair and El-Naggar, and vitrectomy surgery all within a two- year span. (Dkt. 1 ¶¶ 20-24, 26, 28.) Plaintiff's then-doctor, Dr. El-Naggar, indicated that Plaintiff was legally blind in the right eye and that further surgery would not be appropriate. (Dkt. 1 ¶ 29.) Dr. El-Naggar did perform surgery on Plaintiff's left eye. (*Id.*) Plaintiff does not even aver that any delay caused the blindness in his right eye or that any failure to further operate on the right eye contributed to the onset of blindness or failed to cure a curable blindness. I suggest that Plaintiff's averments do not manifest a meaningful allegation of inadequate medical care, let alone deliberate indifference of a serious medical need. *Estelle, supra; Westlake, supra.*

Therefore, I suggest that Plaintiff has failed to state a claim for an Eighth Amendment violation. *Wilson, supra; Blackmore, supra. See also Hall v. Beeler*, No. 96-6182, 1997 WL 539691 (6th Cir. Aug.

8

29, 1997) (affirming grant of summary judgment where although diabetic plaintiff experienced gradual vision loss due to diabetic retinopathy and alleged that defendants were deliberately indifferent to his medical needs relating to this failing vision, plaintiff failed to provide evidence of objective component because his vision loss was neither preventable nor correctable and failed to provide evidence showing intentional behavior by any defendant to deny him medical care under the subjective component); *Alexander v. Jones*, No. 00-1003, 2000 WL 1562841 (6th Cir. Oct. 12, 2000) (finding that plaintiff failed to state an Eighth Amendment violation where "[a]lthough [plaintiff] told the defendants he could go blind if not treated that day, in the absence of medical proof or obvious symptoms the defendants had no reason to accept [plaintiff's] dire predictions").

Plaintiff in this case was not deprived of insulin or any other medication or treatment that he needed. *Cf. Derfiny v. Pontiac Osteo. Hosp.*, 106 Fed. Appx. 929 (6th Cir. 2004) (remanding for further proceedings regarding qualified immunity claims where diabetic plaintiff's blood sugar was only analyzed ten times in ten months to determine correct level of insulin to be administered although it was recommended by his prior doctor that he be tested on a daily or twice daily basis); *Natale v. Camden County Corr. Facility*, 318 F.3d 575 (3rd Cir. 2003) (finding sufficient evidence to survive summary judgment where the doctor who initially saw plaintiff prior to incarceration noted that plaintiff was an insulin-dependent diabetic yet plaintiff was not given any insulin for 21 hours, was then given one dose and released that same day and suffered a stroke two days later); *Hunt v. Uphoff*, 199 F.3d 1220 (10th Cir. 1999) (finding sufficient allegations to state a claim where diabetic plaintiff was denied insulin, even though it had been prescribed by a doctor, for over a year and where other medically-recommended treatments were not performed, aggravating his heart condition).

Plaintiff also cites the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, as a ground for this action. Specifically, he alleges that Defendants "failed to provide him with writing or legal assistance in a timely manner as well as failure to provide him with medication intended to mitigate his

9

condition in a timely manner . . . [and] have refused to provide health care for the Plaintiff, forcing him to bring this action." (Dkt. 1 ¶¶ 34-35.)  I suggest that this assertion is also unavailing.

When the ADA was initially enacted, it was unclear whether the Act applied to state prison employees only or whether the Act also applied to state prisoners. The Supreme Court held that the ADA applied to state prisoners in June of 1998 and the Sixth Circuit expressly followed that decision in 1999. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L. Ed. 2d 215 (1998); *Keys v. Grayson*, 179 F.3d 996, 1001-02 (6th Cir. 1999).

The alleged failure to provide Plaintiff with writing or legal assistance sounds as if Plaintiff is alleging he was denied a meaningful access to the courts, rather than a violation of the ADA.  To the extent that his claim is construed as such, it must fail because he has not alleged that he suffered any prejudice to his legal work.  *See Lewis v. Casey*, 518 U.S. 343, 355, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) (prisoner must demonstrate actual prejudice to pending or contemplated litigation to state a claim for denial of constitutional right of meaningful access to the courts).

A disabled prisoner may state a claim under the ADA if he can show that he has been denied services that have been provided to other prisoners.  *Rashad v. Doughty,* 4 Fed. Appx. 558 (10th Cir. 2001).  However, where as here, the only allegation is failure to provide adequate medical treatment, there can be no violation of the ADA because the ADA does not "create a remedy for medical malpractice." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).  *See also Grzan v. Charter Hosp. of Northwest Ind.,*104 F.3d 116, 123 (7th Cir. 1997).

Furthermore, Title II of the ADA does not provide for individual capacity suits against state officials, *see* 42 U.S.C. § 1213(1), *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000), and Eleventh Amendment immunity bars equal protection-type claims, such as the instant claim, under Title II of the ADA.  *Popovich v. Cuyahoga County Ct. of Common Pleas, Domestic Rel. Div.*, 276 F.3d 808, 811 (6th Cir. 2002) (en banc) (finding due process-type claims may be actionable under the ADA but that equal protection-type claims are not).

10

I suggest that even if the merits of the ADA were addressed, dismissal would remain appropriate. *See Moore v. Curtis*, 68 Fed. Appx. 561 (6th Cir. 2003) (affirming summary judgment in favor of defendants as to Eighth Amendment claim where plaintiff "failed to show that he suffered any serious harm or was deprived of any basic human need" and where plaintiff failed to "present substantial evidence to support either the objective or subjective components" and, as to his ADA claim, where plaintiff "did not allege or show that the defendants deprived him of any service, program, or activities because of his disability, and his disputes with staff and his inmate assistants resulted in only isolated instances where he missed meals or privileges"); *Frazier v. State of Michigan*, 41 Fed. Appx. 762 (6th Cir. 2002) (finding complaint failed to state a claim for violation of the ADA where "complaint contained no specific facts in support of his conclusory allegations" and where it "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights."); *Smith v. Franklin County,* 227 F. Supp. 2d 667, 676-77 (E.D. Ky. 2002) (assuming Plaintiff had a qualified disability, claim under ADA was dismissed because Plaintiff "failed to specify the programs, facilities, services, activities, or benefits which Plaintiff was purportedly denied");.

To the extent that Plaintiff seeks damages for "emotional injuries" (Dkt. 1 at 18) ("mental anguish"), I suggest that Plaintiff has failed to plead a claim that meets the Prison Litigation Reform Act's requirement that any action for emotional injury suffered while in custody is barred unless the prisoner can show physical injury. 42 U.S.C. § 1997(e). The physical injury need not be significant, but it must be more than *de minimus* for an Eighth Amendment claim to proceed. *Adams v. Rockafellow*, 66 Fed. Appx. 584, 586 (6th Cir. 2003) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

**2.    Defendants Dr. Steel, P.A. Sherman, Correctional Medical Services, Inc. ("CMS"), Dr. Audberto Antonini ("Dr. Antonini"), Dr. Kim, Dr. Messany, and Dr. Pandya**

These Defendants argue in their motion to dismiss that Plaintiff has failed to state a claim under the Eighth Amendment, has failed to exhaust administrative remedies, and that some of Plaintiff's claims are barred by statute of limitations. (Dkt. 60.) Specifically, Defendants assert that any claims arising from

11

the following grievances are time-barred: #1 (Dr. Pandya), #3 (Dr. Antonini), #4 (Dr. Antonini), #13 (CMS, Dr. Antonini, Dr. Steele, and P.A. Sherman), #14 (CMS, Dr. Antonini, and Dr. Messany), #16 (Dr. Antonini), #19 (Dr. Kim). (Dkt. 60 at 6-10.)

I suggest this Court need not delve into the specifics regarding which claims are alleged by Defendants to be less than fully exhausted since this Court has the power to dismiss a complaint that fails to state a claim upon which relief can be granted without first requiring the exhaustion of administrative remedies. 42 U.S.C. § 1997e(c)(2). I further suggest that the motion to dismiss filed by these defendants be granted for the same reasons indicated with regard to Defendants Black, Lockhart, Lee, Hodgkins, Sawyer, Sharpley, and Blount – Plaintiff's allegations fail to rise to the level of a constitutional violation.

### 3. Defendants Dr. Doyle, G. Cotton Correctional Facility, David DeGraaf, and Jean Marie King

Defendants Dr. Doyle, G. Cotton Correctional Facility and Jean Marie King have apparently not been served to date. (Dkt. 12, 21, 29, 40.) This action could be dismissed, without prejudice, against these unserved defendants under FED. R. CIV. P. 4(m). Defendant David DeGraaf was served on May 23, 2006, but no answer has been filed by him or on his behalf. (Dkt. 32.) A default could properly enter against DeGraaf under Rule 55 of the Federal Rules of Civil Procedure. However, since I suggest that Plaintiff has failed to state a claim against these defendants as well as the others, I suggest resolution of the motion to dismiss be applied to them as well. *See Jackson v. Madery*, 158 Fed. Appx. 656 (6th Cir. 2005) (affirming district court's dismissal of complaint against all defendants including two who had not been served); *Simpson v. Overton*, 79 Fed. Appx. 117 (6th Cir. 2003) (affirming district court's dismissal of claims against defendants who had failed to answer complaint).

### E. Conclusion

For the reasons stated above, I suggest that all defendants are entitled to dismissal of all claims against them because Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff has

failed to aver facts that could establish either the objective or subjective elements of his Eighth Amendment claims and he has failed to properly assert a claim under the ADA.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

 s/ *Charles E. Binder*
CHARLES E. BINDER
United States Magistrate Judge

Dated: February 20, 2007

### CERTIFICATION

I hereby certify that this Report And Recommendation was electronically filed this date, electronically served on Julia Bell, Christine Campbell and Michael Kennedy, served on Kenneth Cox by first class mail, and served on District Judge Lawson in the traditional manner.

Date:  February 20, 2007            By       s/Jean L. Broucek
                                        Case Manager to Magistrate Judge Binder