UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH COX, JR.

        Plaintiff,         Case No. 06-10350
                                     Honorable David M. Lawson
v.

CORRECTIONAL MEDICAL SERVICES, INC.,
AUDBERTO ANTONINI, DR. CLARK, DR. DOYLE,
DR. KIM, DR. MESSANY, DR. PANDYA, DR. STEEL,
G. COTTON CORRECTIONAL FACILITY,
MICHIGAN DEPARTMENT OF CORRECTIONS,
DAVID DEGRAAF, KARMEN BLOUNT, MS. BLACK,
MR. LOCKHART, JEAN MARIE KING,
JAYNA SHARPLEY, P.A. SHERMAN, PEGGY LEE,
SERGEANT HODGKINS, and SERGEANT SAWYER,

        Defendants.
_____/

## ORDER ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS, GRANTING DEFENDANTS MOTIONS TO DISMISS, AND DISMISSING CASE WITH PREJUDICE

This matter is before the Court on the plaintiff's objections to Magistrate Judge Charles E. Binder's report recommending that the Court grant the motions to dismiss filed by two groups of defendants and dismiss the balance of the complaint against two unserved defendants and another defendant who was served but has not answered. The plaintiff, a prisoner serving a lengthy sentence in the custody of the Michigan Department of Corrections, filed this action *pro se* alleging that his constitutional rights were violated by prison officials who provided inadequate medical care that resulted in his blindness. Via 42 U.S.C. § 1983, he brings his claims under the Eighth Amendment, and he also alleges that he faces the threat of retaliation for the exercise of his First Amendment rights. In addition, the plaintiff contends that the defendants have violated the Americans with

Disabilities Act, 42 U.S.C. § 12101, *et seq.* (ADA), by failing to provide aid to him to accommodate his blindness. The Court referred the matter to Magistrate Judge Charles E. Binder for general case management, after which the defendants filed their motions. On February 20, 2007, Judge Binder issued his report recommending dismissal, and the plaintiff filed timely objections. One group of defendants has responded to the objections; the other has not and the time for doing so has now expired. The Court has conducted a *de novo* review of the matter and now concludes that the plaintiff's objections to the report and recommendation lack merit, he has not stated a valid claim against any of the defendants – including the one that was served and has not answered – under the Eighth Amendment or the ADA, and the plaintiff has abandoned his First Amendment claim. Therefore, the Court will overrule the objections, adopt the magistrate judge's recommendation, and dismiss the case.

I.

The plaintiff, Kenneth Gerald Cox, Jr., commenced this *pro se* action on January 26, 2006. Although the plaintiff is presently confined at the Riverside Correctional Facility (RCF) in Ionia, Michigan, the plaintiff alleges that the critical incidents took place there and at the Muskegon Correctional Facility (MCF), the G. Robert Cotton Correctional Facility (JCF), the Charles Egeler Reception and Guidance Center (R&GC), the State Prison of Southern Michigan (SMI), and the Mound Correctional Facility (NRF). The named defendants include various corrections officers and medical personnel, as well as Correctional Medical Services, Inc. (CMS), the Michigan Department of Corrections (MDOC), and the healthcare department at the JCF. In his complaint, the plaintiff claims that the defendants subjected him to cruel and unusual punishment by failing to provide adequate medical care. As a result, he alleges, he has become legally blind. The plaintiff also

claims that his rights under the ADA have been violated by virtue of the defendants' failure to accommodate his condition. These shortcomings include a failure to provide writing or legal assistance and "a failure to provide him with medication intended to mitigate his condition in a timely manner." Compl. at ¶ 34. The plaintiff also suggests that the defendants have violated his First Amendment rights by transferring him to other facilities in retaliation for filing grievances.

On February 18, 2001, the plaintiff was sentenced to 20 to 30 years in prison for a series of offenses, including armed robbery, home invasion, and breaking and entering. Shortly after being incarcerated, he was given an eye examination at Duane Waters Hospital due to the fact that he is an insulin dependent diabetic, and was told that he had "bleeding blood vessels in the back of both eyes." *Id.* at ¶ 20-21. Dr. Dastair performed eye surgery on the plaintiff, but he still complained of "seeing blood spots in his eyes and his vision getting blurry." *Id.* at ¶ 23. His request for further treatment from Dr. Dastair was denied, but he was instead sent to see another doctor.

Eventually the plaintiff made his way back to Dr. Dastair, who informed the plaintiff that he now required a different type of surgery. As a consequence, the plaintiff saw another doctor who performed laser surgery "several times." *Id.* at ¶ 25. The plaintiff was subsequently transferred to RCF, where he underwent another surgery by yet another doctor, Dr. Margherio.

On August 19, 2002, the plaintiff was transferred to JCF, where "the quality of health care went from bad to worse." *Id.* at ¶ 28. Despite numerous requests for additional medical treatment, defendants "CMS and/or the MDOC, via their foot-dragging, denied these requests." *Ibid.*

On March 7, 2003, the plaintiff met with Dr. El-Neggar, who diagnosed the plaintiff as legally blind. The plaintiff claims that he suffers from this condition, as well as a cataract, due to the "acts, omissions and deliberate indifference of the Defendants." *Id.* at ¶ 33.

Attached to the complaint are a number of grievance forms that the plaintiff has submitted to show exhaustion of administrative remedies. *See* Compl., Exs. A-Q, Grievances and Responses. There can be no doubt, based on these forms, that the plaintiff has vigorously sought redress from prison officials for the alleged wrongs.

Five months after the Court referred the case to Judge Binder for pretrial case management in February 2006, the plaintiff filed a motion for preliminary injunction to prevent MDOC from "arbitrarily transferring" him from prison to prison and to compel MDOC to provide him with devices and aids to accommodate his vision disability. Judge Binder recommended denial of the motion, the plaintiff objected, and the Court ultimately adopted the recommendation and denied the motion. In the meantime, one group of defendants – Dr. Clark, Karmen Blount, Ms. Black, Mr. Lockhart, Jayna Sharpley, Peggy Lee, Sergeant Hodgkins, Sergeant Sawyer, MDOC, and the health care unit at the JCF – filed a motion styled as one for summary judgment. Despite its title, however, the defendants' motion primarily challenged the legal sufficiency of the complaint.

Slightly over a month later, another group of defendants (comprised of all the remaining defendants except for Dr. Doyle, David DeGraaf, and Jean Marie King) filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). They contended that the plaintiff had failed to state a claim under the Eighth Amendment, failed to exhaust administrative remedies, and some of his claims were barred by the applicable statute of limitations.

In addressing these motions, Magistrate Judge Binder began his report by observing that waivers of service with respect to defendants Doyle and King were returned unexecuted and no subsequent filings were made regarding their status. As for defendant DeGraaf, the magistrate judge observed that his waiver of service was returned executed, but he never filed an answer. Judge

Binder ultimately concluded that the case should be dismissed as to these three defendants because the complaint lacked merit, as analyzed under the theories presented by the other defendants. As to those parties, Judge Binder applied Rule 12(b)(6) and determined that the plaintiff could not proceed on his Eighth Amendment claim because the plaintiff had not alleged facts establishing deliberate indifference to a serious medical need. The plaintiff could not satisfy the objective element – that the claimed deprivation was sufficiently serious – because he had not alleged "any detrimental effect amounting to anything more than aggravation on his part." R&R at 8. He could not meet the subjective component – that the defendants acted with a level of deliberateness "tantamount to an intent to punish" – because the plaintiff's own averments showed that the defendants had provided substantial medical care.

As for the plaintiffs' claim under the ADA, the magistrate judge noted that it was unclear whether the Act even applied. The part of the complaint alleging failure to provide writing and legal assistance, the magistrate judge reasoned, sounded more like an allegation of denial to meaningful access to the courts. To the extent that the plaintiff did attempt to allege an ADA claim relating to his disability, however, the magistrate judge suggested that it would be barred. The magistrate judge stated that the plaintiff's claim against state officials could not proceed in federal court under the Eleventh Amendment. Even putting that aside, the magistrate judge suggested that the plaintiff had not alleged that he was deprived of a service or otherwise discriminated against on the basis of his disability, and he suffered no more than *de minimus* harm.

The plaintiff filed objections to the report and recommendation on March 7, 2007. One group of defendants responded on March 15, 2007 contending, among other things, that the plaintiff's objections are untimely.

II.

Objections to a report and recommendation are reviewed *de novo*. 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir.1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

A.

The first issue, raised by the defendants' response to the objections, is whether the objections are timely. Judge Binder issued his report on February 20, 2007. Consistent with 28 U.S.C. § 636(b)(1), the magistrate judge stated that objections had to be filed within ten days following service of the report. Federal Rule of Civil Procedure 6 governs computation of time and provides that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Fed. R. Civ. P. 6(a). In addition, the day of the triggering event is not to be included. *Ibid.* Under these rules, the plaintiff's objections in this case would ordinarily be due on or before March 6, 2007. The plaintiff's objections were filed on March 7, 2007. However, when a case involves a prisoner, a motion or objection is "deemed filed when the inmate gives the document to prison officials to be mailed." *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). Courts in the Sixth Circuit apply the rule – known as the "prison mailbox rule" – in civil matters when a *pro se* plaintiff is incarcerated at the time of filing. *Richard*

*v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002) (holding that a complaint placed in the prison mail system before the expiration of a statute of limitations tolled the applicable limitation). Here, the plaintiff signed his objections on March 5, 2007, and he presumably placed the document in the prison mail system at that time. Because March 5, 2007 falls within the prescribed ten-day period, the Court finds that the objections are timely.

B.

The plaintiff's first substantive objection is that the magistrate judge erred in failing to recommend a default judgment against David DeGraaf under Rule 55. He does not attempt to impeach the authority cited by the magistrate judge, but simply reasons that default judgment is appropriate "because the Court has acknowledged that Mr. DeGraff has been served, yet he failed to respond." Pl.'s Objs. at 4.

Federal Rule of Civil Procedure 55 authorizes the clerk of court to enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). When the claim is for a sum certain, the clerk may then enter judgment by default upon request of the plaintiff and upon affidavit of the amount due. Fed. R. Civ. P. 55(b)(1). In all other cases, judgment by default may be entered only by application to the Court. Fed. R. Civ. P. 55(b)(2). In any case, however, the Court has broad discretion in determining the circumstances under which a default judgment should enter. *See, e.g., In re The Home Restraurants, Inc.*, 285 F.3d 111, 114-15 (1st Cir. 2002). As the authorities have noted, "[t]his element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when [a] defendant is technically in default and that fact has been noted under Rule 55(a)." Wright & Miller, 10A Federal Practice & Procedure § 2685 (3d ed. 1998).

Among the factors that the Court may consider include how harsh an effect a default judgment would have and whether the facts alleged in the complaint state a valid cause of action. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Wolf Lake Terminals, Inc. v. Mutual Marine Ins. Co.*, 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005); Wright & Miller, 10A Federal Practice & Procedure § 2685 (3d ed. 1998).

There are two reasons why the plaintiff's first objection must be overruled. First, the plaintiff never filed an application for entry of default judgment with the Court. Although the plaintiff's complaint includes a claim for a sum certain, it also includes broad injunctive and declaratory relief. Therefore, the plaintiff was required to submit an application for default judgment to the Court, and could not simply secure a default judgment by applying to the clerk's office. *See* Fed. R. Civ. P. 55(b). But the plaintiff did neither. He never sought entry of default under Rule 55(a); in fact, it appears that the present objections are the first time the plaintiff has ever mentioned DeGraff's failure to answer the complaint. Second, assuming the plaintiff had filed a proper application, this Court would not be inclined to enter a default judgment for the very reason cited by the magistrate judge. The sound exercise of discretion does not favor entry of default judgment where the plaintiff has failed to state a claim supported by the law. *See Au Bon Pain Corp.*, 653 F.2d at 65; *Wolf Lake Terminals, Inc.*, 433 F. Supp. 2d at 941; Wright & Miller, 10A Federal Practice & Procedure § 2685 (3d ed. 1998). This objection will be overruled because, as explained more fully below, the plaintiff has failed to state a claim against any of the defendants, including David DeGraff.

C.

The plaintiff's second objection addresses the merits of his Eighth Amendment claim. He says the magistrate judge erred in finding that the plaintiff had not satisfied the objective component by failing to aver serious harm *caused* by the defendants' wrongdoing. According to the plaintiff, he "did in fact allege in his complaint and in his grievances that he was not only being denied recommended treatment, but that the denial of treatment was causing irreparable harm to his eyesight." Pl.'s Objs. at 11. With respect to the subjective component, the plaintiff states that he has also shown deliberate indifference because "it just makes sense that any time a diabetic is having vision problems requiring surgery or other attention, time is critical." *Id.* at 13. In other words, the plaintiff contends that the gravity of his plight was obvious, and the only fair inference is that, by ignoring that risk of harm, the defendants behaved with deliberate indifference to the plaintiff's welfare. *See id.* at 12-13.

As an initial matter, the Court agrees with the magistrate judge's approach that treated both defense motions as motions to dismiss under Rule 12. "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). "However, while liberal, this standard of review does require more than the bare

assertion of legal conclusions." *Ibid.* Federal Rule of Civil Procedure 8(a) requires that the complaint give the defendant fair notice of the nature of the claim and the factual grounds upon which it rests. *Twombly*, 127 S. Ct. at 1964. Therefore, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detail factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted) (alteration in original). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (1984)); *see also Ana Leon T. v. Fed. Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review).

Although it is generally improper to consider matters outside of the pleadings on a motion to dismiss, that rule does not apply to documents referenced by the pleadings themselves that are central to the plaintiff's claim. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). As noted earlier, the plaintiff in this case attached copies of several grievance documents to the complaint and discussed them extensively in an effort to show exhaustion and the merits of his case. The Court, therefore, will consider those documents in determining if the complaint states a cognizable claim.

The Supreme Court has held that the Eighth Amendment imposes upon prison officials the duty to "provide humane conditions of confinement," and among the obligations attendant to the discharge of that duty is to "ensure that inmates receive adequate food, clothing, shelter, and medical

care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This obligation, however, is not unqualified. To the contrary, it is tightly circumscribed by rules requiring certain levels of proof when a prisoner argues that his conditions of confinement have crossed the boundary established by "contemporary standards of decency" incorporated into Eighth Amendment jurisprudence. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (observing that "the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion))). Thus, although under the Eighth Amendment prisoners have a limited constitutional right to proper medical care, that right is violated only when corrections officials are deliberately indifferent to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).

A claim that the Eighth Amendment has been violated by a prison official's deliberate indifference to a prisoner's adequate medical care requires proof of both a subjective and an objective component. *Farmer*, 511 U.S. at 834. To satisfy the subjective component, the plaintiff must show that "the prison official possessed 'a sufficiently culpable state of mind in denying medical care.'" *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). Although "it is not necessary that the prison officials consciously sought to inflict pain by withholding treatment," *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988), "[m]ere negligence is not sufficient," *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993). Rather, the plaintiff must "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). In other words, "[t]he official's conduct 'must demonstrate deliberateness tantamount to an intent to punish.'" *Ibid.*

(quoting *Molton*, 839 F.2d at 243). This requirement "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)).

To satisfy the objective component, the plaintiff must allege that the medical need asserted is "sufficiently serious." *Farmer*, 511 U.S. at 834. However, "while medical proof may be necessary to assess whether the denial of medical care caused a serious medical injury in cases where the prisoner['s] . . . 'affliction is seemingly minor or non-obvious,' no such evidence is required where the individual had a 'serious need for medical care that was so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 604 (6th Cir. 2005) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)).

The plaintiff's second objection targets the magistrate judge's findings as to both the objective and subjective components of his Eighth Amendment claim. Although the plaintiff appears to have a valid point concerning satisfaction of the objective prong, he has not shown error vis-à-vis the subjective component, and the claim must fail as a result.

The magistrate judge suggested that the plaintiff had failed to allege facts satisfying the objective element in that he did not claim the allegedly inadequate medical care *caused* significant harm. *See* R & R at 8 ("Plaintiff does not even aver that any delay caused the blindness in his right eye or that any failure to further operate on the right eye contributed to the onset of blindness or failed to cure a curable blindness."). The Court believes the magistrate judge erred in reaching that conclusion. The plaintiff has expressly alleged that his vision problem was "caused by the bungling and administrative foot-dragging" of the defendants. Compl. at ¶¶ 29, 32.

But even if the complaint adequately states facts that satisfy the objective component, the magistrate judge's ultimate conclusion is sound because the plaintiff failed to demonstrate that the defendants possessed "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and he then disregarded that risk." *Comstock*, 273 F.3d at 703. This requirement "is meant to prevent the constitutionalization of medical malpractice claims," like those presented by the plaintiff in this case. *See ibid.*

In his complaint, the plaintiff concedes that a qualified physician performed laser surgery on both eyes "several times," and again on his right eye at a later time. Compl. at ¶¶ 25, 29. His statement of facts reveals that he was given a battery of tests and attended numerous medical appointments, including referrals to free-world specialists, from April 2001 to March 2003. *Id.* at ¶¶ 20-29. In addition, the grievance materials attached to the complaint tell a story more complete than the plaintiff lets on.

For instance, in September 2002, the plaintiff lodged a grievance explaining that he had requested and been denied a bottom bunk and high-top shoes. Compl., Ex. C at 1. The bunk request was based on the plaintiff's allegation that alighting from a top bunk posed a health risk due to the fact that his vision problems disrupted his balance and coordination. The shoe request, on the other hand, was premised on his weak ankles and numb feet as a result of diabetes. Prison officials responded by providing the plaintiff with a bottom bunk, but they denied his request for hi-tops for want of a physician's recommendation.

In February 2003, the plaintiff filed a grievance alleging general neglect in connection with his "ongoing eye problem." Compl., Ex. F at 1. Although prison officials originally found there was no merit to the grievance because the kites sent out by the plaintiff did not relate to his eye problem and it had not yet been determined that he was "legally blind," they later acknowledged that he was diagnosed as legally blind in March 2003. In April of that year, the MDOC stated that "some issues need to be addressed." *Id.* at 5. MDOC scheduled an appointment for the plaintiff to see a nurse to determine what special accommodations were needed and enrolled him in the "Disability Chronic Care Clinic." *Ibid.*

In January 2004, the plaintiff filed a grievance alleging that prison officials had delayed in refilling his eye-drop prescription. Compl., Ex. I at 2. MDOC noted in response that the delay did not appear to be deliberate, and eye drops were delivered to the plaintiff only one week after his grievance. Also in January 2004, the plaintiff lodged a grievance complaining about MDOC's failure to provide him with a keyed lock (as opposed to a combination lock) for storage of personal items. Compl., Ex. J at 2. The plaintiff was issued a keyed lock within a month.

In June 2004, the plaintiff complained again, this time about an officer's failure to give him access to his "accommodator." Compl., Ex. L at 1-2. MDOC had assigned to the plaintiff an individual to provide assistance with reading and writing, and the plaintiff wanted that person to read a misconduct report to him. MDOC found that the request had been properly denied because the plaintiff was in administrative segregation at the time, and security policies preempted the request.

In January 2005, the plaintiff filed another grievance relating to his eye-drop prescription. He complained that his prescription had run out on December 29, 2004, and it had not been filled

in a timely manner. Compl., Ex. Q at 1. MDOC responded by noting that he was provided with a refill on January 4, 2005, and the short delay did not amount to a serious threat to his health.

In February 2005, following his transfer to RCF, the plaintiff filed a grievance alleging that his special accommodation for reading and writing assistance was not being honored at the new facility. Compl., Ex. R at 1. In response, MDOC observed that the plaintiff had failed to notify staff of his vision problems during orientation. MDOC stated that the plaintiff would be scheduled for an appointment with medical personnel to determine his needs; in the meantime, "housing unit staff were notified to assist the prisoner as needed." *Id.* at 2.

In March 2005, the plaintiff was seen by a vitreoretinal specialist, who determined that the plaintiff was no longer legally blind (or perhaps never had been). Compl., Ex. S at 7. Although the plaintiff disagreed with that finding, MDOC found that it was adequately documented, and the plaintiff failed to furnish any evidence to the contrary. MDOC discontinued the plaintiff's access to an eye patch and cane, but referred him to an optometrist for prescription eye wear. Shortly thereafter, MDOC determined that the plaintiff was ineligible for a program providing legal writing assistance because he did not have the requisite medical condition (i.e., his vision problem was not severe enough).

These documents show that the defendants were quite responsive to the plaintiff's myriad requests and provided reasonable care in a timely manner. They also contain evidence tending to prove that the plaintiff is not even legally blind. At least one doctor so found in March 2005. Given this latter evidence, there is obviously less force to the argument that the defendants "subjectively perceived facts from which to infer substantial risk to the prisoner." *See Comstock*, 273 F.3d at 703. Even ignoring that fact, however, it is clear that the plaintiff has alleged nothing more than mere

negligence. He was seen by several doctors, given high-tech treatment, and supplied with supplemental medication in an essentially timely manner. These facts, which can be drawn from the face of the complaint and the documents attached thereto, do not suggest "'deliberateness tantamount to an intent to punish.'" *Comstock*, 273 F.3d at 703 (quoting *Molton*, 839 F.2d at 243). The Court believes, therefore, that the magistrate judge properly determined that the plaintiff's claim under the Eighth Amendment should be dismissed as to all defendants pursuant to Rule 12(b)(6).

D.

In his final objection, which relates to his claim under the ADA, the plaintiff contends that the magistrate judge erred because the plaintiff has alleged a claim under the ADA in that his vision disability substantially limits a major life activity (seeing), and the defendants have failed to accommodate that disability. He argues that he is entitled to items such as a cane and keyed padlock, and again emphasizes his need for reading and writing assistance to pursue grievances and litigation.

The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, proscribes discrimination based on disability "against a qualified individual with a disability." 42 U.S.C. § 12112(a). *Accord Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). "A person is defined as having a 'disability' within the meaning of the ADA if she has 'a physical or mental impairment that substantially limits one or more of the major life activities of such individual.'" *Bryson v. Regis Corp.*, __ F.3d __, __, 2007 WL 2326046, *11 (6th Cir. 2007). "Discrimination" under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). *See also Kleiber*, 485 F.3d at 868 (explaining that "failing to make a reasonable accommodation falls within the

ADA's definition of 'discrimination'"). "Reasonable accommodations" may include "making existing facilities . . . readily accessible to and usable by individuals with disabilities" and "acquisition or modification of equipment or devices, . . . the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). A vision impairment may amount to a disability under the ADA, but the effect of corrective and mitigating measures that can be taken (such as prescription lenses) must be considered in determining whether an individual is disabled. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999); *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 755 (7th Cir. 2006). The Supreme Court has held that the ADA applies to prisoners. *Pennsylvania Dep't. of Corrections v. Yeskey*, 524 U.S. 206, 209-10 (1998).

The plaintiff's third objection must be overruled. Although the Court questions the magistrate judge's suggestion that the Eleventh Amendment precludes the plaintiff's claim against state defendants in federal court, *see Board of Trustees v. Garrett*, 531 U.S. 356, 374 n.9 (2001); *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 605 (7th Cir. 2004); *Bruggerman ex rel. Bruggerman v. Blagojevich*, 324 F.3d 906, 912-13 (7th Cir. 2003), this matters little becasue the plaintiff's claim fails on the merits. To make out his claim under the ADA, the plaintiff must show, at a minimum, that he had a disability and that his custodians failed to reasonably accommodate that disability. *See Yeskey*, 524 U.S. at 209-10; *Kleiber*, 485 F.3d at 868. The plaintiff's status as disabled throughout the period in question is dubious because, although a doctor deemed him legally blind in 2003, another physician found to the contrary in 2005. The complaint and its attachments conclusively show that when the plaintiff was considered legally blind, prison officials provided him with many of the items and services he requested, such as a bottom bunk, a keyed lock, an eye patch,

a cane, eye drops, and assistance with reading and writing. Although there were some bumps in the road (e.g., the provision of special accommodations apparently lapsed when the plaintiff was transferred to a new facility), those incidents represented the exception and not the rule. According to the plaintiff's pleadings, when the plaintiff was disabled, he was provided with reasonable accommodations in keeping with the ADA. In March 2005, a vitreoretinal specialist determined that the plaintiff was no longer legally blind, at which point MDOC discontinued his access to a cane, eye patch, and legal writing assistance. Although MDOC could have maintained these accommodations, it was not required to because the plaintiff was no longer disabled. Moreover, it is not as if MDOC treated the plaintiff's vision problem as non-existent, since it referred him to an optometrist for prescription eye wear. The plaintiff has not alleged facts showing a violation of the ADA at any point during his incarceration.

E.

Although not mentioned by the magistrate judge or the plaintiff, one further point deserves discussion. One might read the complaint as including a First Amendment retaliation claim. However, it is not even clear that the plaintiff intended to plead a claim for retaliation under the First Amendment. In his recitation of the background facts, the plaintiff implied that he had been transferred due to his filing of grievances, *see* Compl. at ¶ 28 ("On August 19, 2002, the Plaintiff was transferred to JCF, ostensibly for medical reasons"), and he asked the Court to issue an injunction prohibiting the defendants from taking retaliatory action. However, he never expressly pled a First Amendment retaliation claim or developed facts in support of one. Assuming *arguendo* that the plaintiff did plead a First Amendment claim, it is nevertheless clear that he has since abandoned that claim. The plaintiff has not discussed the issue since he filed his complaint, the

defendants did not acknowledge it in their motions, and the magistrate judge reasonably assumed it was not a part of the case. Moreover, if there were any place one would expect the plaintiff to raise the issue, it would be in an objection to the magistrate judge's report. The plaintiff raised no such objection. That claim, such as it is, presents no obstacle to dismissal here.

III.

The Court has considered the defendants motions to dismiss *de novo* following the magistrate judge's report and the plaintiff's objections. The objections lack merit, and the motions will be granted.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt #67] is **ADOPTED**, and the plaintiff's objections [dkt #68] are **OVERRULED**.

It is further **ORDERED** that the motion to dismiss by defendants Dr. Clark, Karmen Blount, Ms. Black, Mr. Lockhart, Jayna Sharpley, Peggy Lee, Sergeant Hodgkins, Sergeant Sawyer, the Michigan Department of Corrections, and the health care unit at the G. Robert Cotton Correctional Facility [dkt #52] is **GRANTED**.

It is further **ORDERED** that the motion to dismiss by defendants Correctional Medical Services, Inc., Audberto Antonini, Dr. Kim, Dr. Messany, Dr. Pandya, Dr. Steel, and P.A. Sherman [dkt #60] is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE** as to all defendants.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: September 26, 2007

> **PROOF OF SERVICE**
>
> The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 26, 2007.
>
> s/Felicia M. Moses
> FELICIA M. MOSES